UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRAL DRM LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SEVEN WEST MEDIA LIMITED,<br><br>　　　　Defendant. | Case No. 24-cv-06354-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 24 |

Plaintiff Viral DRM accuses defendant Seven West Media Limited ("Seven West or defendant") of copyright infringement under 17 U.S.C. § 501, removal or alteration of CMI in violation of the Digital Millennium Copyright Act ("DMCA," 17 U.S.C. § 1202(b)), and falsification of CMI in violation of the DMCA (17 U.S.C. § 1202(a)).[1] Complaint ("Compl.") [Dkt. No. 1] ¶¶ 47-69. Seven West moves to dismiss, arguing that Viral DRM does not have standing to sue under the Copyright Act or the DMCA. *See* Motion to Dismiss ("Mot.") [Dkt. No. 24].[2] Although Viral DRM lacks standing under the Copyright Act because it is not the legal owner or exclusive licensee of the right to sue for infringement of the copyrights in question, it has shown injury sufficient to state a claim under the DMCA. For those reasons, as explained below, the motion is GRANTED in part and DENIED in part, with leave to amend.

---

[1] Viral DRM dismissed defendant Kate Hennikier from the lawsuit without prejudice. *See* Notice of Voluntary Dismissal [Dkt. No. 19].

[2] Seven West brought this motion under FRCP 12(b)(1). *See* Mot. at 2. Viral DRM responds that a motion to dismiss for lack of standing for copyright infringement should be brought under Rule 12(b)(6) and not 12(b)(1). Opposition to Motion to Dismiss ("Oppo.") [Dkt. No. 26] at 5. Both parties are right. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) (motions challenging Article III standing should be brought under Rule 12(b)(1) while motions challenging statutory standing should be brough under Rule 12(b)(6)). The distinctions between the rules do not materially impact the resolution of this motion. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015).

**BACKGROUND**

Plaintiff Viral DRM is a syndicator of videographic content created by affiliated videographers ("content creators") who cover weather extremes. Complaint ¶ 14. It alleges that its exclusive weather event videos are frequently "copied, downloaded, and reuploaded" by infringers because Viral DRM is a popular source of footage of weather events that "cannot be obtained elsewhere." *Id.* ¶ 16. It is "the exclusive authorized agent of the copyrighted works at issue in this case. Viral DRM, through written agreement with the videographers and photographers, has the exclusive right to pursue infringement matters relating to these copyrighted works." *Id.* ¶ 1 n.1.

Viral DRM asserts that it "owns valid copyrights in the Works at issue." *Id.* ¶ 48. It complains that Kate Hennikier and her employer Seven West Media Limited copied and downloaded Viral DRM's works from YouTube. *Id.* ¶¶ 25-28. It asserts that they then edited the works, removed Viral DRM's copyright management information ("CMI") from the works, and uploaded infringing versions of the works to YouTube. *Id.* ¶¶ 28-29. It alleges that they did so to advertise, market, and promote their own YouTube channel ("7NEWS AUSTRAILIA"), earning them money in the process. *Id.* ¶¶ 25, 30.

**DISCUSSION**

**I.    STANDING UNDER THE COPYRIGHT ACT**

Under § 501(b) of the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The six "exclusive rights" in a copyright are enumerated in section 106 of the Act. They are the rights "to do and to authorize" others: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission. *See id.* § 106. Either "an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for the purposes of the Act." *Minden Pictures, Inc.*, 795 F.3d at 1003 (emphasis in original).

1    Seven West's primary argument for dismissal is that Viral DRM lacks statutory standing to
2    sue for violations of the Copyright Act and the DMCA.  It bases this argument on the admission in
3    Viral DRM's Complaint and the express language in the exemplar written agreement Viral DRM
4    uses with its content creators.  It points first to footnote 1 of the Complaint where Viral DRM
5    alleges it "is the exclusive authorized *agent* of the copyrighted works at issue in this case.  Viral
6    DRM, through written agreement with the videographers and photographers, has the exclusive
7    right to pursue infringement matters relating to these copyrighted works."  Compl. ¶ 1 n.1
8    (emphasis added). It argues that while this allegation appears to confer the "right to pursue
9    infringement" claims, that is not sufficient to show that Viral DRM is the legal or beneficial owner
10   of an exclusive right under a copyright.  Mot. at 3.

11   Next, Seven West refers to the contents of an "exemplar agreement" that Viral DRM
12   provided to Seven West.  *See* Mot., Appendix A [Dkt. No. 23-3] ("Exclusive Copyright
13   Management Agreement" or "Agreement").  Seven West argues that nothing in the Agreement
14   transfers legal or beneficial copyright ownership over the videos to Viral DRM.  The title of the
15   Agreement, "Exclusive Copyright Management Agreement," shows that it confers management
16   rights, not ownership rights.  Section 1 of the Agreement provides that creators transfer "exclusive
17   agency rights" to "display, store, transmit, and distribute [videographer's] Works" to Viral DRM.
18   Section 3 of the Agreement *preserves* ownership rights in the creator, undermining Viral DRM's
19   purported standing to sue.  It explicitly provides that "[a]ll copyright and ownership rights in the
20   Works remain the sole and exclusive property of the Content Creator[]."

21   Seven West relies on *DRK Photo,* where the Ninth Circuit held that the plaintiff did not
22   have rights protected by the Copyright Act because their agency agreements "lack[ed] any
23   limitation whatsoever on the photographers' authority to contract with other licensing agents."
24   *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 984 (9th Cir. 2017); *see*
25   *also Minden*, 795 F.3d at 1005 (agent could pursue copyright infringement claim where agency
26   agreement gave agent exclusive power to grant third party licensees).  Here, the only license
27   discussed in the Agreement is Viral DRM's "non-exclusive, worldwide rights to display, store,
28   and transmit" works.  Agreement § 3.  "[N]onexclusive licenses and assignments of the bare right

3

to sue . . . are insufficient to confer standing." *DRK Photo*, 870 F.3d at 988.

Viral DRM responds first that defendant's standing attack is factual in nature and should be decided on a motion for summary judgment. Oppo. at 5. Similarly, it argues that Seven West should not be able to rely on or discuss the exemplar Agreement or other matters outside of the Complaint to undermine Viral DRM's assertion in the Complaint that "Viral DRM owns valid copyrights in the Works at issue listed on Exhibit 1." Compl. ¶ 48. But because Viral DRM asserted in its Complaint that "written agreements" exist that confer the rights at issue to it, the exemplar Agreement is incorporated by reference and may be considered on this motion to dismiss.[3]

Viral DRM argues that, regardless, the Agreement supports its standing. It points to the grant of "exclusive agency rights" in Section 1 of the Agreement, making it sufficient to confer at least one legal copyright right to Viral DRM. Oppo. at 5. It also relies on the videographers' declarations, submitted with its opposition, where the creators affirm that Viral DRM was granted "'exclusive agency rights to manage and administer' [their] content," so on an exclusive basis it was granted the rights "needed in order to register [their] copyright in the work at issue, bring lawsuits on behalf of [them] for infringement of [their] copyright in the work at issue, and negotiate settlements on [their] behalf for the work at issue." Oppo. Ex. 5 ¶ 5; Dkt. Nos. 26-4, 26-5, 26-6, 26-7, 26-8, 26-9.

The "exclusive agency rights" granted to Viral DRM in Section 1 of the Agreement do not confer standing. The "exclusive agency rights" identified are to "manage and administer" creator content, including registering copyrights, searching for copyright infringement, negotiating settlements, and filing claims "on behalf" of content creators to "enforce the copyrights."

---

[3] Under the "incorporation by reference" doctrine, a court may "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citations omitted); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.") (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

4

Agreement § 1. Those rights do not "map upon" the enumerated rights protected by Section 106 of the Copyright Act. *See id.*

Viral DRM also points to the end of Section 1, where content creators convey it the "exclusive agency right to display, store, transmit, and distribute the Works as needed to fulfill the obligations set forth in this agreement." *Id*. That language, in context, provides Viral DRM with the exclusive right to take these steps *in connection* with managing and enforcing the agency rights identified in Section 1. Any other reading would conflict with Sections 3 and 4 of the Agreement that expressly give a non-exclusive license to Viral DRM to do those same things and preserve the ownership in the copyrights with the content creators.[4] Viral DRM's nonexclusive license "does not confer standing to sue" because there was no "transfer of an associated exclusive right." *Righthaven LLC v. Hoehn,* 716 F.3d 1166, 1169 (9th Cir. 2013); *see also Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005).

Certain exclusive agency rights can confer standing to sue under the Copyright Act. In *Minden*, the court found that Minden had an exclusive agency right because "the photographers promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs." 795 F.3d at 1005. Here, however, Sections 3 and 4 of the Agreement preserve all "ownership rights" in the works to the contract creators and specifically allow content creators the option to "license[] any of the Works to third parties, either prior to or during any term of this Agreement." Agreement §§ 3, 4. In order to license the products for display, storage, transmittal or otherwise available for view by third parties, the content creators must simply notify Viral DRM. *Id.* Any licenses Viral DRM has to the right to "publicly display, store, transmit or make the works available" is non-

---

[4] Seven West also argues in the event that this court finds that the plain language of the Agreement is inconclusive that the weight of the Agreement shows that Viral DRM does not have standing to sue. Reply at 3. It cites to *Righthaven LLC v. Hoen*, where the Ninth Circuit held that the "substance of the transaction" along with the purported language of the assignment agreements showed that Righthaven had no exclusive rights under the Copyright Act. 716 F.3d at 1170. Seven West contends that the Agreement here similarly limits "exclusive agency rights" because it specifies that the rights were granted only "as needed to fulfill the obligations set forth in this agreement." Reply at 3. Although I find that the plain language is conclusive, I agree that the substance of the Agreement, as in *Righthaven*, "place[] limits" on what Viral DRM may do with its purported exclusive agency rights for Section 106 rights. 716 F.3d at 1170.

5

exclusive. *Id.* § 3.

I will not consider the content creator declarations on this motion. They are not referenced in the Complaint and were only submitted in opposition to support Viral DRM's purported "exclusive rights." Not only is there no basis on a Rule 12(b)(6) motion to consider the declarations, but they also contradict the plain language of the Agreement that confers no limitation on the ability of videographers to contract with third parties. *See Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 973 (D. Nev. 2011) (the plain language of the agreement conferring intent for exclusive rights in copyright trumped post hoc explanations of the intent of the agreement). Even if I considered the declarations, the rights the creators believe they conveyed to Viral DRM – the "management and administration of copyrights," including registering copyrights, negotiating settlements, and bringing lawsuits on behalf of the content creators – are not exclusive legal rights protected under Section 106. 17 U.S.C. § 106.

Considering the allegations in the Complaint as well as the Agreement incorporated by reference, Viral DRM has not plausibly alleged or shown that it is the legal owner or exclusive licensee of the right to sue for copyright infringement of the videos at issue. The motion to dismiss the copyright infringement claim is GRANTED.

## II.    STANDING UNDER THE DIGITAL MILLENIUM COPYRIGHT ACT

### A.    Statutory Standing

Seven West argues that because Viral DRM has no standing to sue for copyright infringement under 17 U.S.C. section 501 as a "copyright holder," it also lacks statutory standing to sue for violations of the DMCA under 17 U.S.C. sections 1202(a) and (b). *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004) ("The statutory structure and the legislative history both make it clear that the DMCA granted *copyright holders* additional legal protections, but neither rescinded the basic bargain granting the public noninfringing and fair uses of copyrighted materials, § 1201(c), nor prohibited various beneficial uses of circumvention technology, such as those exempted under §§ 1201(d),(f), (g), (j)." (emphasis added)).

While the Ninth Circuit has not addressed the issue, two district courts within the Ninth Circuit have concluded that "any person injured by a violation of section 1201 or 1202" may bring

1  an action for such violation, even where that person was not the copyright owner or holder.

2  *Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008) (internal

3  quotation marks omitted); *RealNetworks, Inc. v. Streambox, Inc.*, 2000 WL 127311, at *6 (W.D.

4  Wash. Jan. 18, 2000); *see also Sanborn Libr. LLC v. ERIS Info. Inc.*, No. 19CV2049JHROTW,

5  2024 WL 1744630, at *19 (S.D.N.Y. Mar. 25, 2024) (following *Echostar* and allowing DMCA

6  standing for any entity injured by an alleged violation of the DMCA).  Their analysis is

7  persuasive.

8        Seven West wants me to rely exclusively on *Chamberlain*, 381 F.3d at 1202.  But the

9  *Chamberlain* opinion did not analyze the issue here and simply noted that "the DMCA granted

10  copyright holders *additional* legal protections."  381 F.3d at 1202 (emphasis added).  Instead, I

11  agree with the analysis of the district courts from the Ninth Circuit who have squarely addressed

12  the issue:  Recovery is not explicitly limited to the copyright holder, because under the express

13  language of the statute "[a]ny person" that is injured by the conduct may bring an action for this

14  violation.  17 U.S.C. § 1203(a).

15        As in *Echostar*, where standing for DMCA claims was conferred by the plaintiff's

16  "control of the technological measure that protects the copyrighted work," 543 F. Supp. 2d at

17  1205, standing here is conferred by Viral DRM's rights to enforce and protect the content holders

18  copyrighted works from non-licensed users.  Viral DRM has adequately alleged how Seven

19  West's stripping of the CMI from the protected works and falsely claiming the works injured Viral

20  DRM.  Compl. ¶¶ 58-60, 64-67.

21        Seven West next argues that even if Viral DRM has standing despite not being the

22  copyright holder, the DMCA claims should nonetheless be dismissed because Viral DRM has not

23  adequately alleged "particularized facts in support of damages" for its DMCA claims.  Mot. at 5.

24  However, Viral DRM alleges that the videos at issue contained CMI indicating ownership by Viral

25  DRM and its affiliate ("Live Storm Media"), including watermarks.  Compl. ¶¶ 15, 56.  These

26  watermarks include identifying the Works as the "property of LIVE STORMS MEDIA" and that

27  they were "NOT FOR BROADCAST," among others.  *Id.*  Viral DRM contends that defendants

28  edited the videos "to remove or crop out Viral DRM's proprietary watermarks and data," in order

1  to facilitate copyright infringement and damaging Viral DRM. *Id.* ¶¶ 38, 58-60. It also states that
2  Seven West, in a counternotice in response to Viral DRM's DMCA notice, "knowingly and with
3  the intent to enable or facilitate copyright infringement, falsely provided its own CMI in violation
4  of 17 U.S.C. § 1202(a)." *Id*. ¶ 66. It asserts that Seven West did so to "induce, enable, facilitate
5  or conceal infringement of Viral DRM's rights in the Works at issue," thereby harming Viral
6  DRM. *Id*. ¶¶ 67-68. These allegations are sufficient to plausibly support its allegations of damage
7  under the DMCA.

    Viral DRM has standing to bring its DMCA claims as a person injured by the alleged DMCA violations with the rights to pursue DMCA violations under the statute. 17 U.S.C. § 1203(a).

**B.  Article III Standing**

    Finally, Seven West argues that Viral DRM lacks Article III standing to sue under the section 1202(b) of the DMCA because Viral DRM fails to allege "particularized facts in support of damages for its DMCA injuries" under that section of the DMCA that prohibits removal of CMI. Mot. at 5. For the same reasons that Viral DRM has statutory standing, it has Article III standing.[5] As the entity given the authority both to manage and enforce the content creators' copyrights and the right to control the CMI use to protect those rights, Viral DRM has plausibly alleged sufficient harm under the DMCA to support Article III standing. The motion to dismiss the DMCA claims is DENIED.

**III.  LEAVE TO AMEND**

    Viral DRM argues that if the court agrees it lacks standing for any of its claims, it should be permitted leave to amend to add the videographers as "nominal plaintiffs." Oppo. at 7. Seven West counters that the case should be dismissed in full for lack of standing.

    Because I have found that Viral DRM has standing to pursue its DMCA claims, I will

---

[5] "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id*. at 425.

8

dismiss the Copyright Act claim with leave to amend. Viral DRM may name whichever plaintiffs it believes are necessary to pursue the copyright infringement claims when it amends.

## CONCLUSION

For the foregoing reasons, Seven West's motion to dismiss Viral DRM's copyright infringement claim is GRANTED for lack of standing to sue under the Copyright Act. Viral DRM has plausibly alleged its standing under the DMCA, however, and Seven West's motion to dismiss the DMCA claims is DENIED. Viral DRM is given leave to amend its copyright claim. Any amended complaint should be filed within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 28, 2025

William H. Orrick
United States District Judge